## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE  NO. 08-32404-H4-13 |
| CHARLES D. GILBREATH and | § | |
| KRISTIN B. GILBREATH, | § | Chapter 13 |
| | § | |
| Debtors. | § | |

## AMENDED MEMORANDUM OPINION ON DEBTORS' OBJECTION TO CLAIM
## NUMBER 22, 23, 24, 25, 26, 27, AND 28 OF ECAST SETTLEMENT CORPORATION[1]
[Docket Nos. 30-36]

### I. INTRODUCTION

In its opinion in *Parsley*, this Court cautioned that it would continue to monitor the shoddy practices of creditors and their attorneys resulting from the corrosive "assembly line" culture fostered by flat fee engagements that have become common in the consumer bankruptcy field. *In re Parsley*, 384 B.R. 138, 183-85 (Bankr. S.D. Tex. 2008). In *In re Prevo*, No. 08-30815, 2008 WL 4425799 (Bankr. S.D. Tex. Aug. 7, 2008), this Court, following up from its *Parsley* opinion, took to task a creditor who failed to abide by the rules for filing proofs of claim and for obtaining post petition fees and expenses. Now, once again, this Court finds itself in the unfortunate position of having to police attorneys and their clients to ensure that they comply with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

---

[1] This Court issued the original Memorandum Opinion on October 14, 2008. [Docket No. 115.] This Amended Memorandum Opinion has been filed to replace one sentence in what was originally footnote 3of Section IV(B) of the original Memorandum Opinion (former footnote 3 is now footnote 4 due to the insertion of this first footnote in this Amended Opinion). Specifically, in the first paragraph of that original footnote 3, the third sentence is deleted and replaced with the following sentence: "Courts adopting the 'exclusive view' hold that 11 U.S.C. § 502(b) provides the exclusive basis for disallowance of claims, and that the creditor's failure to attach documents, alone, is not a basis for an objection." The original Memorandum Opinion has not been changed in any other respect with one exception: the very last paragraph of this Amended Opinion states that the order sustaining the objection has already been entered on the docket.

It is this Court's duty to see that the rules are complied with and that the letter and purpose of the Bankruptcy Code are carried out.  This Court will therefore reiterate its message in *Prevo*: the Court will not permit creditors to file proofs of claim without attaching the required documentation, and then hold out until the debtor objects and hearings are held before providing  the necessary documents to prove up their claims.  Such practices are lazy and waste the time of both the parties and the Court by requiring hearings on matters that could have been resolved if the appropriate documentation had been attached to the original proofs of claim.

## II. Factual Background

### A.  ECast's Original Proofs of Claim and Debtors' Objections

ECast Settlement Corporation (eCast) filed original proofs of claim 22 through 28 on June 25, 2008.  These proofs of claim contain the last four digits of the Debtor's account number, the amount due, and statements that eCast is the assignee of various financial institutions, namely GE Money Bank, Capital One Bank, Wells Fargo, and Bank of America.

The Debtors filed objections to eCast's original proofs of claim 22 through 28 on July 11, 2008.  [Docket Nos. 30-36.]  The Debtors' objections to eCast's proofs of claim alleged that the "Debtors do not owe any money to eCast" and complained that eCast had not attached documentation sufficient to support its claims and that the proofs of claim failed to meet the requirements of Fed. R. Bankr. P. 3001.  The Court held a brief hearing on July 21, 2008, and informed the parties that they should return on August 18, 2008 for a trial on the merits.

### B.  ECast's Amended Proofs of Claim and Debtors' Objections

After the initial hearing on July 21, 2008, eCast—now realizing that it could not get away with its deficient proofs of claim and would be in a fight with the Debtors—amended its original

2

proofs of claim and provided affidavits and documentation in support of claims 22 through 28. These exhibits, most of which were electronically filed on August 14 and 15, 2008, [Docket Nos. 71, 72, 73, 88, 89, 90], and some of which were included in eCast's amended proofs of claim as late as August 18, 2008, were never offered into evidence at the trial held on August 18, 2008. Although counsel for eCast brought a binder containing documents in support of claims 22 through 28 to the hearing, she never moved to admit these documents. Therefore, these documents are not part of the record.

### 1. ECast's Amended Proofs of Claim

ECast amended its original proofs of claim 22, 23, and 24 on July 28, 2008 to include a handful of monthly statements on certain accounts purportedly held by the Debtors. On August 14, 2008, eCast filed supporting affidavits executed and signed by Heidi Brown, a recovery specialist employed by GE Consumer Finance, Inc., the holding company for GE Money Bank, FSB (GEMB). In these affidavits, Ms. Brown certifies the balance of Debtor Kristen Gilbreath on her credit card accounts issued by GEMB, and further states that "GEMB sold its rights, as of the date of the sale, to the Receivables to the Debtor's Accounts to [eCast]." [Docket Nos. 71-73.] Ms. Brown also certifies in all three affidavits that "[a] search for the account application has been conducted and is unable to be located, possibly due to the age of the account." [Docket Nos. 71-73.] Also attached to eCast's amended proofs of claim 22, 23, and 24 are various bills of sale from JCPenney, Lowe's, and Old Navy,  reflecting charges on the Debtors' accounts.

ECast amended its original proof of claim 26 on August 12, 2008 to include monthly statements and bills of sale relating to eCast's purchase of its claim from Capital One Bank.  On August 15, 2008, eCast also filed an affidavit signed by Michael Lewis, an employee of Capital One

Bank, which certifies the balance on the Debtors' account with Capital One, and that the account was sold to eCast on May 30, 2008. [Docket No. 88.] ECast also attached to its amended proof of claim 26 a bill of sale entitled "Exhibit 1 to Forward Flow Receivable Sale Agreement dated May 16, 2008," which contains the following language:

> Capital One Bank (USA), National Association ("Seller"), in consideration of a Purchase Price of [redacted] and other valuable consideration, the receipt of which is hereby acknowledged, hereby sells, assigns and transfers all right, title and interest in the Accounts identified in the Sale File entitled 20080522PS17BE.SLDFLE2.TXT.enp (which may be in electronic form) to eCast Settlement Corporation ("Buyer"), without recourse or representation except as expressly provided herein or on the terms, and subject to the conditions, set forth in the Agreement (as defined below).
>
> This Bill of Sale is delivered pursuant to that certain Forward Flow Receivable Sale Agreement, dated as of May 16, 2008, by and between Seller and Buyer (the "Agreement"). All capitalized terms used, but not defined, in this Bill of Sale shall have the meanings assigned to such terms in the Agreement.

[Docket No. 88, Ex. B.]

ECast amended its original proofs of claim 25 and 28 on August 18, 2008 to include affidavits signed by Debra Pellicciaro, an employee of Bank of America, certifying the amounts owed by the Debtors on their accounts with Bank of America. Ms. Pellicciaro also certifies in each affidavit that "[t]hat said agreement and account was, on June 20, 2008 sold, transferred and set over unto [eCast], with full authority to do and perform all acts necessary for collection, settlement, adjustment, compromise or satisfaction of the said claim." [Docket Nos. 89 & 90.] ECast's amended proofs of claim 25 and 28 also included monthly statements and bills of sale.

ECast amended its original proof of claim 27 on July 24, 2008 with a handful of monthly statements and a document entitled "Assignment of Accounts" signed by Steve Samuelson, an employee of Wells Fargo Bank. [Docket No. 64, Ex. 2.] This document purports to transfer to eCast

4

"all right, title and interest in and to (i) certain unsecured consumer line of credit accounts and consumer credit card accounts (the "Accounts") which are described on computer files furnished by [Wells Fargo Bank] to [eCast] on a monthly basis and (ii) all applicable proceeds of such Accounts after the date the applicable computer file was delivered to [eCast]." [Docket No. 64, Ex. 2.] This document also contains the following language:

> Each of the obligations of [Wells Fargo Bank] required to be performed by [Wells Fargo Bank] on or prior to the date hereof pursuant to the terms of the Purchase Agreement dated as of January 1, 2008 between [Wells Fargo Bank] and [eCast] (the "Agreement") has been duly performed and all representations and warranties of the Seller made under the Agreement are true and correct as of the date hereof.

[Docket No. 64, Ex. 2.] ECast did not attach any affidavits in support of claim 27.

### 2. The August 18, 2008 Hearing

On August 18, 2008, the Court held a hearing on Debtors' Objections to eCast's proofs of claim. At the hearing, the Debtors argued that eCast does not have standing as a matter of law to file a claim without proof of ownership. The Debtors also asserted that the documents attached to eCast's amended proofs of claim were insufficient to establish the validity of claims 22 through 28. In closing, the Debtors argued that eCast's practice of filing proofs of claim without supporting documentation ignores the claimant's initial burden of production and requires the Debtors to demand documents that should have been attached to the original proofs of claim. As already noted, eCast did not move to admit any of its exhibits and did not offer any evidence at the hearing. Thus, the record, like eCast's original proofs of claim, is bare.

### III. JURISDICTION AND VENUE

5

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1).  This dispute is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (O).  Venue is proper pursuant to 28 U.S.C. § 1408(1).

## IV. ECAST'S BURDEN OF PROOF WITH RESPECT TO ITS ORIGINAL PROOFS OF CLAIM

A proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of that claim and is deemed allowed unless a party in interest objects. *See* 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f).  However, proofs of claim that fail to comply with the Bankruptcy Rules are not *prima facie* valid and are therefore not deemed allowed.  *See Brock v. Brock (In re Brock)*, No. 06-4228, 2008 WL 2954621, at *6 (Bankr. E.D. Tex. July 31, 2008); *In re Reyna*, No. 08-10049-CAG, 2008 WL 2961973, at *3-6 (Bankr. W.D. Tex. July 28, 2008); *In re White*, No. 06-50247-RLJ13, 2008 WL 269897, at *3-5 (Bankr. N.D. Tex. Jan. 29, 2008).

### A. *Prima Facie* Validity of eCast's Original Proofs of Claim

At the August 18, 2008 hearing, eCast argued[2] that proofs of claim need not include supporting documentation—that such documentation need only be attached once a debtor objects and a dispute arises.  In support of this contention, eCast relies on the language of Bankruptcy Rule 3001(f), which states that "[a] proof of claim executed and filed in accordance with these rules shall

---

[2] The Court notes that counsel for eCast made few arguments at the August 18, 2008 hearing.  Rather, she mostly adopted arguments made by counsel for another creditor who was defending against the Debtors' objections to his client's proofs of claim.  The Court therefore treats arguments raised by this other attorney as eCast's arguments for all intents and purposes.

constitute prima facie evidence of the validity of the amount of the claim." Fed. R. Bankr. P. 3001(f). With regard to its assigned claims, eCast asserts that because Bankruptcy Rule 3001(e) requires that "evidence of the transfer shall be filed by the transferee" for claims transferred *after* the proof of claim is filed, and is silent as to evidence required for claims transferred *before* the proof of claim is filed, no supporting evidence is required on the latter proofs of claim. *See* Fed. R. Bankr. P. 3001(e)(1)-(4).

These arguments ignore the plain language of Bankruptcy Rule 3001(a) and (c), the clear instructions on the Official Proof of Claim Form (Form 10), and the wealth of case law on the issue in this circuit.

Bankruptcy Rule 3001(a) mandates that "[a] proof of claim shall conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). Additionally, Bankruptcy Rule 9009 states that the Official Forms "shall be observed." Fed. R. Bankr. P. 9009. Paragraph 7 of Form 10 requires the creditor to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements" or a summary of such documents. Paragraph 7 of Form 10 also requires that "[i]f the documents are not available, please explain." It is difficult to understand how a creditor could substantially comply with this instruction by filing a proof of claim without documentation or any explanation. At the very least, Form 10 requires creditors to give a reason why supporting documents have not been attached.

Moreover, Bankruptcy Rule 3001(c) provides that when a claim is based on a writing (e.g., a credit card agreement), "the original or duplicate shall be filed  with the proof of claim," and "[i]f the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction

shall be filed with the claim." Fed. R. Bankr. P. 3001(c). This language could not be more clear—creditors must attach documents (or copies thereof) to their proof of claim or explain why they have not. *See also In re Hight*, No. 07-36683, 2008 WL 3539802, at *5 n.7 (Bankr. S.D. Tex. Aug. 13, 2008) (determining that a creditor that failed to attach any supporting documentation to support its claims violated Bankruptcy Rule 3001(c)).

Indeed, the District Court for the Southern District of Texas recently affirmed the ruling by Bankruptcy Judge Brown that proofs of claim to recover amounts on a credit card account must be accompanied by either writings on which they were based or by an explanation of why such writings were not provided. *ECast Settlement Corp. v. Tran (In re Tran)*, 369 B.R. 312, 316-17 (S.D. Tex. 2007). Further, Bankruptcy Judges Felsenthal, Houser, and Hale, of the Northern District of Texas, determined that a lack of supporting documentation strips a claim of any *prima facie* validity. *In re Armstrong*, 320 B.R. 97, 104-05 (N.D. Tex. 2005). The *Armstrong* court held that

> in the case of a credit card or consumer account creditor, in order for the proof of claim to be given *prima facie* effect, the creditor must attach an account statement containing the debtor's name, account number, the prepetition account balance, interest rate, and a breakdown of the interest charges, finance charges and other fees that make up the balance of the debt, or attach enough monthly statements so that this information can be easily determined.

*Id.* at 106.

The *Armstrong* court also determined that a "transferee has an obligation under Bankruptcy Rule 3001 to document its ownership of the claim . . . [by] attach[ing] a signed copy of the assignment and sufficient information to identify the original credit card account." *Id.* (internal marks omitted) (quoting *In re Hughes*, 313 B.R. 205, 212 (Bankr. E.D. Mich. 2004)). Bankruptcy Judge Jones, also of the Northern District of Texas, rejected the argument that Bankruptcy Rule

8

3001(e)'s silence as to evidentiary requirements for claims assigned before the proof of claim was filed eliminates the need to comply with Bankruptcy Rule 3001(c) and Form 10. *See In re White*, 2008 WL 269897, at *4-5.

This Court will follow the ruling of the District Court for the Southern District of Texas in *Tran*. This Court also notes that the Bankruptcy Court for the Northern District of Texas, in *Armstrong*, arrived at the same decision. The language of Bankruptcy Rule 3001(a) and (c) and of Form 10 is not accidental. Indeed, it is purposeful and clear: creditors have the initial burden of coming forward with documentation to support their claims. This Court will not give any party the benefit of the doubt when it comes to their burden of proof. The argument made at the hearing that proving claims is too expensive is of no import. This Court has a duty to enforce the Bankruptcy Rules and the Bankruptcy Code as written.

Even if the Court were inclined to consider the potential costs of complying with the Bankruptcy Rules, its decision would be the same. Bankruptcy Rule 3001(c) provides that if the documents supporting the creditor's claim cannot be produced, "a statement of the circumstances of the loss or destruction shall be filed with the claim." Fed. R. Bankr. P. 3001(c). Further, paragraph 7 of Form 10 allows a creditor to attach a summary of documents supporting the claim and requires some explanation if the documents are unavailable. These rules and instructions appear to be designed specifically to accommodate creditors who claim to be unable to locate the documents on which their claims are based. Given these provisions, it is difficult to understand how providing a summary of documents supporting a claim, or at least providing an explanation for why the proof of claim has nothing attached to it, unduly burdens creditors. The only explanation could be that certain creditors wish to continue their routine of executing and filing proofs of claim without

objection and without any evidence—essentially, without having to do any work.  This practice

violates the Bankruptcy Rules and undermines the bedrock notion of the legal system that claimants

bear the burden of proving their claims.  *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 21 (2000)

(recognizing that "the burden of proof is an essential element of the claim itself," and that "one who

asserts a claim [has] the burden of proof that normally comes with it").

Additionally, this Court is not convinced that eCast's failure to initially attach supporting

documents or any summary of such documents to its original proofs of claim was a good faith

omission.  The documents were clearly not "unavailable," such that Form 10's provision for an

explanation of unavailability would suffice.  In fact, only three days after the Court scheduled a

hearing on the Debtors' objections, eCast attached a slew of documentation on its proof of claim 27

and was subsequently able to find documentation to support the rest of its claims.  ECast's actions

suggest that eCast may have had this documentation all along, or that such documentation was

readily available.  The Court surmises that eCast's failure to comply with Bankruptcy Rule 3001(a)

and (c) and Form 10 was not inadvertent, but may have been a willful omission in violation of the

rules.[3]

For the reasons stated above, eCast's original proofs of claim are not *prima facie* valid.

Claims to recover amounts charged on credit card accounts must be accompanied by supporting

documents or copies thereof or, at the very least, an explanation of why such documents could not

be produced.  ECast did neither in the case at bar.  Further, because eCast's claims have allegedly

been assigned to it, proof of the assignments must also be made in order for eCast to have standing

---

[3] The suspicious circumstances behind eCast's initial failure to comply with the rules and its quickness to amend
certain claims after the Debtors' objections were scheduled for a hearing lend further support to the notion, discussed
*infra*, Section V, that Bankruptcy Rule 7015 should apply to eCast's amendments as a matter of equity.

to bring a claim against the Debtors.  Although eCast attached "bills of sale" in support of  its amended proofs of claim, these bills of sale refer to certain "Forward Flow" agreements and computer files that have not been included.  Because the bills of sale rely on these documents for their essential terms, the bills of sale are ambiguous without them.  Therefore, eCast failed to meet its initial burden of proof with regards to original proofs of claim 22, 23, 24, 25, 26, 27, and 28.

**B.        Consequences of eCast's Failure to Attach Documents to its Original Proofs of Claim**

Although incomplete or insufficient proofs of claim are not *prima facie* valid, they are not automatically disallowed.  *See In re Armstrong*, 320 B.R. at 106.  The debtor, however, "has no evidentiary burden to overcome" in objecting to a claim that is not *prima facie* valid.  *In re Tran*, 369 B.R. at 318.  Once the debtor objects to a proof of claim, the claim's validity becomes a "contested matter" and the burden shifts back to the creditor to prove the claim is valid by a preponderance of the evidence.  *See* 11 U.S.C. § 502; *In re O'Conner*, 153 F.3d 258, 260-61 (5th Cir. 1998); *In re Fid. Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988).  Because the Debtors in the case at bar are objecting to proofs of claim that do not enjoy *prima facie* validity, the Debtors do not have to overcome any evidentiary presumption in making their objections.[4]  The Debtors' objections are

---

[4] Courts disagree about the consequences of a creditor's failure to comply with Bankruptcy Rule 3001 and the instructions in Form 10.  The Tenth Circuit Bankruptcy Appellate Panel (BAP) recently explained that two main schools of thought have developed on the subject—the "exclusive view" and the "nonexclusive view."  *B-Line, L.L.C. v. Kirkland (In re Kirkland)*, 379 B.R. 341, 344 (B.A.P. 10th Cir. 2007).  Courts adopting the "exclusive view" hold that 11 U.S.C. § 502(b) provides the exclusive basis for disallowance of claims, and that the creditor's failure to attach documents, alone, is not a basis for an objection.  *Id.* at 344 n.10 (collecting cases).  The Tenth Circuit BAP also adopted the "exclusive view" in *Kirkland*.  *Id.* at 344.  Courts adopting the "nonexclusive view" hold that a creditor's failure to attach supporting documents is a valid ground for a claim objection, and that, once an objection is lodged, the claim must be disallowed if the creditor fails to prove its claim at the claim objection hearing.  *Id.* at 344 n.11 (collecting cases).  So far, courts within the Fifth Circuit have adhered to the "nonexclusive view."  *See In re Armstrong*, 320 B.R. at 106; *In re Tran*, 369 B.R. at 318.

Courts applying the "exclusive view" frequently make a distinction between "technical" and "substantive" objections.  The Tenth Circuit BAP in *Kirkland*, for example, determined that an objection based solely on insufficient documentation that does not actually dispute liability for the debt is merely "technical," and does not invoke any of the statutory grounds for disallowance in 11 U.S.C. § 502(b).  *Kirkland*, 379 B.R. at 346-47.  To allow such a technical

sufficient to shift the burden back to eCast to prove ownership and validity of its claims in accordance with state law.

## V. ECast's Post-Objection Amendments to its Proofs of Claim

Before this Court proceeds with its analysis of the validity of eCast's claims, it must first determine whether to consider eCast's original proofs of claim, or its amended proofs of claim. If eCast failed to properly amend its proofs of claim, eCast must rely solely on its original proofs of claim to satisfy its burden of proof.

The Debtors filed their objections to eCast's original proofs of claim on July 11, 2008. [Docket Nos. 20-36.] ECast filed its amended proofs of claim 22, 23, and 24 on July 28, 2008, its amended proof of claim 26 on August 12, 2008, its amended proof of claim 27 on July 24, 2008, and its amended proofs of claim 25 and 28 on August 18, 2008. Thus, eCast amended all its claims without leave of court or the consent of the Debtors after the Debtors lodged an objection. This case

---

objection, *Kirkland* explains, would allow debtors to weasel out of undisputed debts and require unnecessary hearings. *Id.* at 348-49.

This Court need not decide the issue since the Debtors made substantive objections (i.e. that the Debtors did not owe eCast anything because there was no proof of assignment). However, this Court believes that the "nonexclusive view" is particularly applicable in a case where, as here, a creditor files a skeletal proof of claim with no documentation attached to it. Although a debtor's claim objection must be couched in one of the statutory grounds for disallowance in § 502(b), complaining that the creditor has offered no documentation in support of its claims necessarily asserts that the claim is "unenforceable against the debtor . . . under . . . applicable law" under § 502(b)(1). 11 U.S.C. § 502(b)(1). This Court knows of no jurisdiction where a claim arising out of a credit card agreement is enforceable without proof of the underlying agreement. Neither is this Court aware of any jurisdiction where a purchaser of contract rights may establish the enforceability of those rights without proof of purchase. The technical/substantive distinction for claim objections seems more applicable in a case where the creditor has at least made a good faith attempt to comply with Bankruptcy Rule 3001. Such is not the case here. If a creditor willfully disregards the language of Bankruptcy Rule 3001 by filing a deficient proof of claim, then the debtor's objection about insufficient documentation should likewise be sufficient to shift the burden back to the creditor to produce the documents that it was required to produce in the first place. Otherwise, the technical/substantive distinction would render Bankruptcy Rule 3001 toothless. Bankruptcy Rule 3001 would never be enforced if debtors could not effectively object to proofs of claims for noncompliance with that rule. Further, it is the creditor's violation of Bankruptcy Rule 3001, not the debtor's objection, that creates the need for unnecessary hearings.

presents an interesting (and apparently novel) question: May a claimant freely amend its proof of claim after the debtor has objected and initiated a contested matter?

## A.  Applicability of Bankruptcy Rule 7015 to Contested Matters

Generally, a creditor may freely amend its proofs of claim before they are successfully objected to by the debtor. *See, e.g., First Nat'l Bank of Mobile v. Everhart (In re Commonwealth Corp.)*, 617 F.2d 415, 422 n.12 (5th Cir. 1980) (noting that "amendment of claims in bankruptcy is liberally allowed" within statutory limits).  However, once the debtor objects to a proof of claim, it becomes a "contested matter" under Bankruptcy Rule 9014. *See In re Cloud*, No. 99-51109, 2000 WL 634637, at *2 (5th Cir. 2000) (unpublished); *see also* Fed. R. Bankr. P. 3007, advisory committee's note ("The contested matter initiated by an objection to a claim is governed by rule 9014 . . . ."); Fed. R. Bankr. P. 9014, advisory committee's note ("[T]he filing of an objection to a proof of claim . . . creates a dispute which is a contested matter . . . .").  Further, Bankruptcy Rule 9014 makes applicable certain procedural rules contained in Part VII of the Bankruptcy Rules, and allows the court to "at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Fed. R. Bankr. P. 9014(c).  Bankruptcy Rule 7015 makes Federal Rule of Civil Procedure 15 (Rule 15), governing amendments, applicable in adversary proceedings.  Taken together, Bankruptcy Rules 9014 and 7015 make Rule 15 applicable in contested matters at the Court's election.[5]

---

[5] The Court takes note of the bankruptcy courts in other circuits that have determined that Bankruptcy Rule 7015 is inapplicable to contested matters. *Cf. In re Carr*, 134 B.R. 370, 372 (Bankr. D. Neb. 1991); *In re Calisoff*, 94 B.R. 1002, 1003 n.2 (Bankr. N.D. Ill. 1988).  These courts have so held because Bankruptcy Rule 9014 does not expressly list Bankruptcy Rule 7015 among the rules in Part VII that "shall apply" to contested matters.  However, this logic disregards the language of Bankruptcy Rule 9014(c), which states that "[t]he court may at any stage in a particular matter direct that one or more of the *other rules* in Part VII shall apply." Fed. R. Bankr. P. 9014(c).

Further, most bankruptcy courts have recognized that "[t]he trend of the cases appear to apply Rule 7015 to contested matters." *In re MK Lombard Group I, Ltd.*, 301 B.R. 812, 816 (Bankr. E.D. Pa. 2003); *see also, e.g., In re Stavriotis*, 977 F.2d 1202, 1204 (7th Cir. 1992) (noting that Bankruptcy Rule 9014 permits extension of Rule 7015 to contested matters); *In re Best Refrigerated Express, Inc.*, 192 B.R. 503, 506 (Bankr. D. Neb. 1996) (applying Rule 7015 through Rule 9014 to allow amendment to a filed proof of claim to relate back); *Enjet, Inc. v. Maritime Challenge Corp. (In re Enjet, Inc.)*, 220 B.R. 312, 314 (E.D. La. 1998) (noting that "numerous courts have applied Rule 7015 and Rule 15(c) explicitly or by analogy in non-adversary [bankruptcy] proceedings"); *In re Brown*, 159 B.R. 710, 714 (Bankr. D.N.J. 1993) (noting that Rule 15's "standards for allowing amendments to pleadings in adversary proceedings . . . also apply to amendments to a proof of claim"); *In re Blue Diamond Coal Co.*, 147 B.R. 720, 725 (Bankr. E.D. Tenn. 1992) (extending Rule 9014 to apply Rule 7015 to contested matters); *In re Enron Corp.*, 298 B.R. 513, 521-22 (Bankr. S.D.N.Y. 2003) (invoking Rule 9014 to apply Rule 7015); 10 Collier on Bankruptcy ¶ 7015.02 n.1 (Matthew Bender 15th ed. Rev.).

Rule 15 requires claimants to obtain "the opposing party's written consent or the court's leave" to amend their claim after being served with a response (here, a written objection). Fed. R. Civ. P. 15(a)(2). It is therefore within this Court's power and discretion to refuse to allow eCast's amendments to proofs of claim 22 through 28, which were filed without leave or consent after the Debtors lodged their claim objections.

## B.  The Court's Equitable Power to Allow or Disallow Amendments

Even if Bankruptcy Rule 7015 is reserved solely for adversarial proceedings, a number of courts have determined that proof of claim amendments are subject to the court's equitable powers

under 11 U.S.C. § 105(a). *See United States v. Johnson*, 267 B.R. 717, 721 (N.D. Tex. 2001); *see also In re Eden*, 141 B.R. 121, 123-24 (Bankr. W.D. Tex. 1992) (recognizing that "many bankruptcy courts—for equitable reasons—do permit amendments to proofs of claim, even past the bar date"). The Seventh Circuit explained that "[Bankruptcy] Rule 7015 is not . . . the only possible authority for amendment. Another possible basis is the bankruptcy court's broad equitable jurisdiction." *In re Unroe*, 937 F.2d 346, 349 (7th Cir. 1991). The District Court for the Northern District of Texas also determined that a bankruptcy court has authority to regulate amendments under its equitable powers pursuant to 11 U.S.C. § 105(a). *Johnson*, 267 B.R. at 721 (concluding that "the [bankruptcy] court's power to prevent abuse of process includes bending the time requirements . . . to permit amendments" (internal marks omitted)).

## C. Ruling Regarding eCast's Post-Objection Amendments

This Court is not prepared to make an ultimate determination as to whether every amendment to a proof of claim filed after the debtor objects requires strict adherence to Rule 15, and these are not the facts on which to do so. The Court does, however, believe that a bankruptcy court's equitable powers play some role in determining whether or not to allow an amendment filed without leave or consent in a contested matter. *See* Fed. R. Bankr. P. 9014(c) (stating that the bankruptcy court "may" direct that other rules in Part VII shall apply). Here, eCast's amendments, two of which were filed *on the day of* the hearing on the Debtors' proof of claim objections, should be subject to the strictures of Rule 15, incorporated through Bankruptcy Rule 7015. Creditors should not be permitted to file woefully deficient proofs of claim in hopes that the debtor will not object, but then, when the debtor does object, to file amendments at the eleventh hour and rely on those amendments at the hearing. This is one of the reasons Rule 15 was enacted—to prevent undue prejudice and

15

surprise to litigants and to permit opposing parties time to prepare for trial.  *See United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002) (determining that "prejudice to the opposing party," "bad faith," and "repeated failure to cure deficiencies" are considerations under Rule 15).

Further, to have eCast's counsel amend some of her client's proofs of claim on the day of the hearing and then complain that she was unnecessarily dragged into court on a groundless objection is inexcusable.  ECast knew that the Debtors had objected to its original proofs of claim on July 11, 2008, but waited to amend until *well after* this Court set the Debtor's objections for a hearing.  In fact, even though she attached some bills of sale and monthly statements to eCast's proofs of claim as early as July 24, 2008, eCast's counsel did not attach any affidavits (explaining the bills of sale) until August 14, 2008, four days before the hearing.  These tactics, taken together with eCast's blatant disregard for Bankruptcy Rule 3001 and the instructions in Form 10 requiring eCast to attach documents (or at least some explanation of why it has not) to its original proofs of claim—*see infra*, Section IV—speaks to the inequity of permitting eCast to amend its deficient claims without leave of court or the Debtors' consent.  Therefore, this Court, pursuant to Bankruptcy Rules 9014 and 7015, Rule 15, and its equitable powers under 11 U.S.C. § 105(a), will not allow these eleventh hour amendments to eCast's proofs of claim 22 through 28.  Because eCast's amendments are disallowed, its original proofs of claim are all that remain to withstand the Debtors' objections.

## VI. Validity of eCast's Original Proofs of Claim

The validity of eCast's claim is based on Texas contract law, but whether its claim is allowable in bankruptcy "is a matter of federal law and the bankruptcy court's exercise of equitable powers."  *See Ford v. Durkey (In re Ford)*, 967 F.2d 1047, 1050 (5th Cir. 1992).  Section 502(b) provides nine grounds for disallowing a claim that has been objected to.  11 U.S.C. § 502(b).  One

of these grounds is that the claim "is unenforceable against the debtor under . . . applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).  Courts have uniformly interpreted this to mean that a claim may be disallowed if it is unenforceable under applicable state law.  *See, e.g., Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007) (recognizing that § 502(b)(1) "requires bankruptcy courts to consult state law in determining the validity of most claims").

For a contract to be enforceable under Texas law, a creditor must produce evidence of the contract under which a debtor is allegedly liable.  *See Preston State Bank v. Jordan*, 692 S.W.2d 740, 744 (Tex. App.—Fort Worth 1985, no writ).  Texas law also requires an alleged assignee of a contract to come forward with evidence of the assignment.  *See Skipper v. Chase Manhattan Bank USA, N.A.*, No. 09-05-196 CV, 2006 WL 668581, at *1 (Tex. App.—Beaumont, 2006, no. pet. hist.) (citing cases).  Therefore, eCast has the burden of proving the validity of its underlying claim, which, under Texas law, requires (1) proof of an enforceable contract between the Debtors and the original creditor, and (2) proof of any subsequent assignment of that contract to eCast.

The inevitable result of the disallowance of eCast's eleventh hour amendments is that eCast's original proofs of claim must, alone, be sufficient to establish the validity of claims 22 through 28. This is clearly not the case.  As stated above, eCast's original proofs of claim are nothing more than bald allegations that certain  credit card accounts of the Debtors were allegedly assigned to eCast by various financial institutions.  These original proofs of claim contain no documentation whatsoever to evidence that eCast is the present owner and holder of the obligations owed by the Debtors. Therefore, eCast's original proofs of claim are insufficient to establish the enforceability of eCast's claims under Texas law.

17

ECast's burden of proof at this stage of the proceeding is greater than it may have been at the time of its initial filing because its claims have been contested. *See Fid. Holding*, 837 F.2d at 698. Had all the documents attached to eCast's filings been offered into evidence at the hearing, taken together, they may or may not have sufficed to prove an enforceable contract by a preponderance of the evidence under Texas law. However, these documents certainly would have sufficed to establish *prima facie* validity had they been attached to eCast's original proofs of claim. The point is this: had eCast correctly filed its original proofs of claim, it could have availed itself of *prima facie* validity, shifted the evidentiary burden to the Debtors, and avoided the strictures and equitable balancing of the post-objection amendment process. Instead, eCast chose to disregard Rule 3001 and the instructions in Form 10 by not attaching any documents to its initial proofs of claim, or giving a written explanation as to why it could not attach such documents.

For the reasons set forth above, eCast has failed to meet its burden of proving the underlying validity of its original proofs of claim 22 through 28 under Texas law. Without proof of the contracts underlying eCast's claims, this Court cannot determine whether eCast's claims are valid. In light of the Debtors' valid objection, eCast has the burden of proving that it holds enforceable claims against the Debtors. ECast has failed to establish the existence of a contract under which the Debtors are liable to eCast and has failed to prove that its claims are enforceable against the Debtors under Texas law.

## VII. CONCLUSION

This Court will not excuse abject failures to comply with the rules and will not give claimants the benefit of the doubt when it comes to meeting their burden of proof. ECast's counsel cited Bankruptcy Rule 1001 in support of her argument that creditors in general, and her client in

particular, should not have to take the time to attach documents to a proof of claim. This rule, in pertinent part, states that "[t]he Bankruptcy Rules and Forms govern procedure in cases under title 11 of the United States Code. . . These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001. In short, eCast argues that this rule, because it references "speedy and inexpensive determination," justifies the filing of deficient proofs of claim.

This argument is wholly unpersuasive. First, it is a fundamental rule of statutory interpretation that "specific provisions trump general provisions." *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 676 (5th Cir. 2003) (citing *In re Nobleman*, 968 F.2d 483, 487 (5th Cir. 1992) (applying this canon of statutory interpretation to the Bankruptcy Code)). Form 10 specifically requires documents to be attached or, if they are not, that a written explanation be given as to why not.

Second, eCast's counsel conveniently forgets that Rule 1001 refers to the need for a "just determination." Here, justice can only be served if the Debtors, as well as the trustee and other creditors, can actually see and read the documents on which eCast bases its claim—including its ownership of the claim.

Third, eCast's counsel equates the phrase "speedy and inexpensive" with the notion that requiring creditors to attach documents is slow and expensive. The Court does not accept this argument for two reasons: (1) eCast introduced no evidence at all to establish that it is slow and expensive for creditors in general and eCast in particular to attach documents to proofs of claim; (2) even if eCast had introduced such evidence, the language in Form 10 allows eCast, and any claimant, to give a written explanation as to why documents cannot be attached—and yet eCast could not even

bother to attach such an explanation to its proofs of claim. ECast, among other creditors, apparently believe that because they have been filing deficient proofs of claim for so long, unchallenged, they do not need to comply with the most basic requirements of the Bankruptcy Rules. However, this Court, in its role as gatekeeper, must assure that only those creditors who meet the evidentiary and filing requirements have their claims allowed. *See Foreclosure Cases*, 2007 WL 3232430, at *3 n.3 ("Unlike the focus of financial institutions, the federal courts must act as gatekeepers, assuring that only those who meet [certain requirements] are allowed to pass through.").

For the foregoing reasons, the Debtors' objections to eCast's proofs of claim 22 through 28 should be sustained. An order consistent with this opinion has already been entered on the docket. [Docket No. 116.]

Signed on this 19th day of November, 2008.

Jeff Bohm
United States Bankruptcy Judge