**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**ENTERED**
**05/29/2009**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **JOSEPHINE RANGEL,** | § | **Case No. 07-37452-H4-13** |
| | § | |
| **MARIA E. MEZA,** | § | **Case No. 07-38242-H4-13** |
| | § | |
| **CHARLES D. GILBREATH and** | § | |
| **KRISTIN B. GILBREATH, and** | § | **Case No. 08-32404-H4-13** |
| | § | |
| **LAWRENCE DAVID VELAZQUEZ and** | § | |
| **TRACY LOUISE VELAZQUEZ,** | § | **Case No.  08-33200-H4-13** |
| | § | |
| **Debtors.** | § | |

**MEMORANDUM OPINION REGARDING APPLICATIONS FOR APPROVAL OF**
**FEES UNDER FIXED FEE AGREEMENT**
[Case No. 07-37452, Docket No. 45]
[Case No. 07-38242, Docket No. 45]
[Case No. 08-32404, Docket No. 143]
[Case No. 08-33200, Docket No. 55]

## I. INTRODUCTION

Two home lenders and one servicing company have filed fee applications in the four above-referenced Chapter 13 cases in order to recover attorneys' fees that these entities paid or promised to pay Barrett, Daffin, Frappier, Turner & Engel, LLP (Barrett Daffin) for its legal services in those cases.

A home lender's ability to collect fees and costs from a Chapter 13 debtor's bankruptcy estate is governed, in the first instance, by the language of its loan documents. This memorandum opinion

therefore concerns the importance of drafting loan documents and home mortgage contracts[1] in a clear and deliberate manner and the consequences of failing to do so.

Set forth below are this Court's findings of fact and conclusions of law in the above-referenced matters. To the extent that a finding of fact is construed as a conclusion of law, it is adopted as such. To the extent that a conclusion of law is construed as a finding of fact, it is adopted as such. The Court reserves the right to make additional findings of fact and conclusions of law as it deems necessary or appropriate.

## II. FINDINGS OF FACT

### A.    The Rangel Case

1.    On November 2, 2007, Josephine Rangel (Rangel) filed a voluntary Chapter 13 petition, initiating case number 07-37452 (the Rangel case). [Case No. 07-37452, Docket No. 1.]

2.    The last day for non-government creditors to file a proof of claim in the Rangel case was March 20, 2008. *See* [Case No. 07-37452, Docket No. 14.]

---

[1] Although this Memorandum Opinion addresses the ability of lenders with claims secured by the debtor's principal residence by way of a note and deed of trust to recover fees and costs from debtors in Chapter 13, the reasoning is equally applicable to mortgagees. The Eighth Circuit recognized over 100 years ago—and it is still true today—that "[t]here is no difference, in legal effect, between a mortgage with a power of sale and a deed of trust, executed to secure a debt, where the power of sale is placed in a third person. Both are securities for a debt. Both create specific liens on the property, and in both the equitable title or right of redemption remains in the debtor, and is an estate or interest in the property which the debtor may sell, or that may be seized and sold under judicial process by his other creditors, subject to the lien created by the mortgage or deed of trust." *Appolos v. Brady*, 49 F. 401, 403 (8th Cir. 1892). That same court acknowledged more recently that, at least with respect to merger of title, "no legal difference exists between a deed of trust and a mortgage." *F.D.I.C. v. Lee*, 988 F.2d 838, 843 n.5 (8th Cir. 1993). Indeed, the one distinction this Court can fathom between a mortgage and a deed of trust is that—at least in some states—the applicable foreclosure procedures differ for each. *See, e.g., United States v. Gish*, 559 F.2d 572, 575 (9th Cir. 1977) (noting that "the differences in foreclosure methods between a mortgage and a deed of trust under Alaska law do not exist nationwide" and that "notwithstanding the differences in foreclosure procedures, the Alaska Supreme Court has commented that: 'A deed of trust is a "mortgage in effect," being only a somewhat different device for accomplishing the same purpose, creating a security interest in land'" (quoting *Brand v. First Fed. Sav. & Loan Ass'n of Fairbanks*, 478 P.2d 829, 831 (Alaska 1970)).

3.      On March 20, 2008, Countrywide Home Loans, Inc. (Countrywide) filed a proof of claim in the Rangel case for $55,664.90.   Countrywide's claim consists of the balance Rangel owes on her note, including $12,412.03 in arrearages that Rangel owed on the date she filed her petition.   Countrywide attached the following documents in support of its proof of claim in the Rangel case:  the deed of trust securing the note; an assignment of the note from Sterling Capital Mortgage Company, the original note holder, to Countrywide; a loan modification agreement between Rangel and Countrywide; and a number of invoices reflecting various professional fees and expenses incurred by counsel for Countrywide, Barrett Daffin, in connection with the Rangel case.  The note itself is not attached to Countrywide's proof of claim.

4.      The deed of trust contains the following language under the heading "Charges to Borrower and Protection of Lender's Rights in the Property":

> If Borrower fails to make these payments or the payments described in paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.
> Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument.

The deed of trust also provides that "Lender may collect fees and charges authorized

3

by the Secretary."[2]

5.      On December 15, 2008, Countrywide filed an Application for Approval of Fees Under Fixed Fee Agreement. [Case No. 07-37452, Docket No. 45.] The application sets forth that Countrywide has paid or promised to pay Barrett Daffin a fixed fee of $200.00 for preparing and filing proofs of claim and $150.00 for preparing and prosecuting fee applications.  Attached to the application is a list of the services performed by Barrett Daffin in connection with the Rangel case, the hours expended on each, and the hourly rate of each employee that performed the services. Countrywide seeks a total of $350.00 in connection with Barrett Daffin's services in the Rangel case.

6.      On December 18, 2008, Rangel filed Debtor's Response to Application for Approval of Fees Under Fixed Fee Agreement, in which she requests that Countrywide's fee application be denied.  [Case No. 07-37452, Docket No. 46.]

**B.      The Meza Case**

1.      On December 2, 2007, Maria E. Meza (Meza) filed a voluntary Chapter 13 petition, initiating case number 07-38242 (the Meza case).  [Case No. 07-38242, Docket No. 1.]

2.      The last day for non-government creditors to file a proof of claim in the Meza case was April 10, 2008.  *See* [Case No. 07-38242, Docket No. 12.]

---

[2] Because Rangel's note is insured by the Department of Housing and Urban Development (HUD), the deed of trust's reference to "the Secretary" presumably refers to the Secretary of Housing and Urban Development.  Indeed, paragraph 9(d) of the deed of trust expressly provides the following: "Regulations of HUD Secretary.  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary."

3.     On April 15, 2008, America's Servicing Company (ASC), a division of Wells Fargo Home Mortgage, filed a proof of claim in the Meza case for $110,362.89.[3] Countrywide's claim consists of the balance Meza owes on her home mortgage note, including $9,695.79 in arrearages that Meza owed on the date she filed her petition. ASC attached the following documents in support of its proof of claim in the Meza case: the note; the deed of trust securing the note; an assignment of the note from Mortgages First Real Estate Services, Ltd., the original note holder, to U.S. Bank National Association;[4] and a number of invoices reflecting various professional fees and expenses incurred by counsel for ASC, Barrett Daffin, in connection with the Meza case.

4.     The note contains the following language under the heading "Borrower's Failure to Pay as Required":

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
>
> . . . .
>
> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include,

___

[3] Though ASC filed its proof of claim in the Meza case after the bar date, the Debtor did not object to ASC's proof of claim. Additionally, at the hearing on ASC's fee application, counsel for the debtor did not raise any issue as to the timeliness of ASC's proof of claim.

[4] ASC is the servicing company for U.S. Bank National Association. Based upon ASC's proof of claim in the Meza case and the exhibits admitted at the February 27, 2009 hearing on ASC's fee application in the Meza case, it appears that the original holder of the Meza note and deed of trust was Mortgages First Real Estate Services, Ltd., who subsequently assigned the note and deed of trust to U.S. Bank National Association.

for example, reasonable attorneys' fees.

5.      The deed of trust contains the following language under the heading "Protection of

Lender's Interest in the Property and Rights Under this Security Instrument":

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.
>
> . . . .
>
> Any amounts disbursed by Lender under this section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

The deed of trust also provides that "Lender may collect fees and charges authorized

by the Secretary."[5]

6.      The deed of trust contains the following language under the heading "Loan Charges":

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property

---

[5] As stated above, *supra* note 2, "the Secretary" presumably refers to the Secretary of Housing and Urban Development.

6

inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

7.     On December 1, 2008, ASC filed an Application for Approval of Fees Under Fixed Fee Agreement. [Case No. 07-38242, Docket No. 45.] The application sets forth that ASC has paid or promised to pay Barrett Daffin a fixed fee of $250.00 for preparing and filing proofs of claim and $150.00 for preparing and prosecuting fee applications. Attached to the application is a list of the services performed by Barrett Daffin in connection with the Meza case, the hours expended on each, and the hourly rate of each employee that performed the services. ASC seeks a total of $400.00 in connection with Barrett Daffin's services in the Meza case.

8.     On December 18, 2008, Meza filed Debtor's Response to Application for Approval of Fees Under Fixed Fee Agreement, in which she requests that ASC's fee application be denied. [Case No. 07-38242, Docket No. 46.]

## C.     The Gilbreath Case

1.     On April 14, 2008, Charles Gilbreath and Kristin Gilbreath (the Gilbreaths) filed a voluntary Chapter 13 petition, initiating case number 08-32404 (the Gilbreath case). [Case No. 08-32404, Docket No. 1.]

2.     The last day for non-government creditors to file a proof of claim in the Gilbreath case was set for August 28, 2008. *See* [Case No. 08-32404, Docket No. 16.]

3.     On June 23, 2008, Wells Fargo Bank, N.A. (Wells Fargo) filed a proof of claim in the Gilbreath case for $199,468.24. Wells Fargo's claim consists of the balance the

Gilbreaths owe on their home mortgage note, including $3,589.36 in arrearages that

the Gilbreaths owed on the date that they filed their petition.  Wells Fargo attached

the note and the deed of trust securing the note to its proof of claim.

4.      The note contains the following language under the heading "Borrower's Failure to

Pay as Required":

> If Borrower defaults by failing to pay in full any monthly
> payment, then Lender may, except as limited by the regulations of the
> Secretary in the case of payment defaults, require immediate payment
> in full of the principal balance remaining due and all accrued interest.
> Lender may choose not to exercise this option without waiving its
> rights in the event of any subsequent default.  In many circumstances
> regulations issued by the Secretary will limit Lender's rights to
> require immediate payment in full in the case of payment defaults.
> This Note does not authorize acceleration when not permitted by
> HUD regulations. As used in this Note, "Secretary" means the
> Secretary of Housing and Urban Development or his or her designee.
>
>                . . . .
>
> If Lender has required immediate payment in full, as described
> above, Lender may require Borrower to pay costs and expenses
> including reasonable and customary attorneys' fees for enforcing this
> Note to the extent not prohibited by applicable law.

5.      The deed of trust contains the following language under the heading "Charges to

Borrower and Protection of Lender's Rights in the Property":

> Borrower shall pay all governmental or municipal charges,
> fines and impositions that are not included in paragraph 2. Borrower
> shall pay these obligations on time directly to the entity which is
> owed the payment. If failure to pay would adversely affect the
> Lender's interest in the Property, upon Lender's request Borrower
> shall promptly furnish to Lender receipts evidencing these payments.
> If Borrower fails to make these payments or the payments
> required by paragraph 2, or fails to perform any other covenants and
> agreements contained in this Security Instrument, or there is a legal
> proceeding that may significantly affect Lender's rights in the
> Property (such as a proceeding in bankruptcy, for condemnation, or
> to enforce laws or regulations), then Lender may do and pay whatever

is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of the Lender, shall be immediately due and payable.

6.  On November 24, 2008, Wells Fargo filed an Application for Approval of Fees Under Fixed Fee Agreement. [Case No. 08-32404, Docket No. 143.] The application sets forth that Wells Fargo has paid or promised to pay Barrett Daffin a fixed fee of $250.00 for preparing and filing proofs of claim and $150.00 for preparing and prosecuting fee applications. Attached to the application is a list of the services performed by Barrett Daffin in connection with the Gilbreath case, the hours expended on each, and the hourly rate of each employee that performed the services. Wells Fargo seeks a total of $400.00 in connection with Barrett Daffin's services in the Gilbreath case.

7.  On December 12, 2008, the Gilbreaths filed a Response to Application for Approval of Fees Under Fixed Fee Agreement, in which they request that Wells Fargo's fee application be denied. [Case No. 08-32404, Docket No. 146.]

**D.    The Velazquez Case**

1.  On May 19, 2008, Lawrence David Velazquez and Tracy Louise Velazquez (the Velazquezes) filed a voluntary Chapter 13 petition, initiating case number 08-33200 (the Velazquez case). [Case No. 08-33200, Docket No. 1.]

2.  The last day for non-government creditors to file a proof of claim in the Velazquez

9

case was September 25, 2008.  *See*  [Case No. 08-33200, Docket No. 20.]

3.      On August 4, 2008, Countrywide filed a proof of claim in the Velazquez case for

$141,733.93.  Countrywide's claim consists of the balance the Velazquezes owe on

their home mortgage note, including $16,501.06 in arrearages that the Velazquezes

owed on the date that they filed their petition.  Countrywide attached the following

documents in support of its proof of claim in the Velazquez case: the note; the deed

of trust securing the note; and a number of invoices reflecting various professional

fees and expenses incurred by counsel for Countrywide, Barrett Daffin, in connection

with the Velazquez case.

4.      The note contains the following language:

> If I am in default, the Note Holder may send me a written
> notice telling me that if I do not pay the overdue amount by a certain
> date, the Note Holder may require me to pay immediately the full
> amount of Principal which has not been paid and all the interest that
> I owe on that amount. That date must be at least 30 days after the date
> on which the notice is mailed to me or delivered by other means.
>
> . . . .
>
> If the Note Holder has required me to pay immediately in full
> as described above, the Note Holder will have the right to be paid
> back by me for all of its costs and expenses in enforcing this Note to
> the extent not prohibited by applicable law. Those expenses include,
> for example, reasonable attorneys' fees.

5.      The deed of trust contains the following language under the heading "Protection of

Lender's Interest in the Property and Rights under this Security Instrument":

> If (a) Borrower fails to perform the covenants and agreements
> contained in this Security Instrument, (b) there is a legal proceeding
> that might significantly affect Lender's interest in the Property and/or
> rights under this Security Instrument (such as a proceeding in
> bankruptcy, probate, for condemnation or forfeiture, for enforcement
> of a lien which may attain priority over this Security Instrument or to

10

enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.

. . . .

Any amounts disbursed by Lender under this section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

6.      The deed of trust contains the following language under the heading "Loan Charges":

Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

7.      On January 9, 2009, Countrywide filed an Application for Approval of Fees Under Fixed Fee Agreement. [Case No. 08-33200, Docket No. 55.] The application sets forth that Countrywide has paid or promised to pay Barrett Daffin a fixed fee of $200.00 for preparing and filing proofs of claim and $150.00 for preparing and prosecuting fee applications. Attached to the application is a list of the services performed by Barrett Daffin in connection with the Velazquez case, the hours expended on each, and the hourly rate of each employee that performed the services.

Countrywide seeks a total of $350.00 in connection with Barrett Daffin's services in the Velazquez case.

8.      On January 19, 2009, the Velazquezes filed Debtors' Response to Application for Approval of Fees Under Fixed Fee Agreement, in which they request that Countrywide's fee application be denied. [Case No. 08-33200, Docket No. 56.]

**E.      The Fee Application Hearings**

On February 23, 2009, this Court held a hearing on the fee applications of the home lenders in the four above-referenced Chapter 13 cases. At this hearing, the Court admitted exhibits from the home lenders in all four cases, admitted exhibits from Rangel and Meza in their respective cases, and heard arguments of counsel. Counsel for Countrywide in the Velazquez case conceded that there is no evidence that Velazquez's note was accelerated. Counsel for Wells Fargo in the Gilbreath case likewise conceded that the Gilbreaths' note was not accelerated. At the conclusion of this hearing, this Court took the matters under advisement.

## III. CONCLUSIONS OF LAW

**A.      Jurisdiction and Venue**

This Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334. These contested matters are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).[6] Additionally, these

---

[6] These matters "concern[] the administration of the estate" under 28 U.S.C. § 157(b)(2)(A) because, in Chapter 13 cases, the estate continues to exist even after a plan is confirmed. In *Sanchez*, this Court held that the Chapter 13 estate remains open if the plan or the order confirming the plan provides as such and other bankruptcy courts have agreed with this assessment. *In re Sanchez*, 372 B.R. 289, 301-02 (Bankr. S.D. Tex. 2007); *see also, e.g., In re Colon*, 345 B.R. 723, 727 (Bankr. D. Kan. 2005) (determining that the Chapter 13 estate continues to exist if the plan or the order confirming it provides as such). Additionally, some bankruptcy courts have determined that the Chapter 13 estate always remains in place post-confirmation to include the debtor's newly acquired property. *See, e.g., Barbosa v. Soloman*, 235 F.3d 31, 37 (1st Cir. 2000) (determining that the Chapter 13 estate continues to exist post-confirmation and continues to be funded by the debtor's regular income); *In re Van Stelle*, 354 B.R. 157, 170-71 (Bankr. W.D. Mich. 2006) (determining that the Chapter 13 estate continues post-confirmation regardless of whether all the pre-confirmation property of the estate re-vests in the debtor). *United States v. Holden*, 258 B.R. 323, 326 (D. Vt. 2000) (determining that

matters are core proceedings under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *In re Ginther Trusts*, No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408(1).

**B.      Attorneys' Fees for Home Lenders**

A home lender's right to charge and collect fees and costs from a debtor in Chapter 13 is largely governed by its loan documents. A creditor whose claim is secured by the debtor's principal residence may collect fees and costs provided for in the loan documents or by applicable state statute. 11 U.S.C. § 1322(b)(2). Additionally, any entity seeking to be reimbursed for attorneys' fees out of the bankruptcy estate must file a fee application setting forth detailed information so that the bankruptcy court may gauge whether such fees are reasonable and necessary in accordance with state law and—in most cases—the loan documents themselves. *See* Fed. R. Bankr. P. 2016 (Bankruptcy Rule 2016). The applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy

---

even though the pre-confirmation chapter 13 estate may re-vest in the debtor, the post-confirmation Chapter 13 estate continues to consist of property that the debtor acquires post-confirmation). Others have determined that the Chapter 13 estate exists post-confirmation but that it is comprised solely of property acquired by the debtor that is necessary to fund the plan. *See, e.g., Black v. U.S. Postal Serv. (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997) (determining that the Chapter 13 estate consists only of income received by the debtor necessary to fund the plan); *In re Foreman*, 378 B.R. 717, 721-22 (Bankr. S.D. Ga. 2007) (determining that the post-confirmation Chapter 13 estate consists only of property acquired by the debtor post-confirmation that is required for plan payments).

Here, because each respective debtor's plan provides that their respective Chapter 13 estates shall remain open until a discharge is granted—the specific plan language is that "[p]roperty of the estate shall vest in the debtors upon entry of the discharge order"—their bankruptcy estates remain open post-confirmation pursuant to this Court's holding in *Sanchez. In re Sanchez*, 372 B.R. at 301-02.

Procedure governing these rights and procedural requirements are set forth in detail and discussed below.

### 1.    Attorneys' Fees for Home Lenders: 11 U.S.C. § 1322(b)(2)

Creditors with claims secured solely by the debtor's principal residence may recover fees and costs provided for under their loan documents even if they are not oversecured.[7]  This right derives from the language of 11 U.S.C. § 1322(b)(2), which allows a Chapter 13 debtor to modify the rights of all secured creditors except for home lenders.  Specifically, § 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence."  Courts have construed this language to mean that Chapter 13 debtors may not alter the rights of home lenders. *See, e.g.*, *Rake v. Wade*, 508 U.S. 464, 464 (1993) ("Section 1322(b)(2) prohibits debtors from modifying the rights of home mortgage lenders . . .").

Section 1322(b)(2)'s anti-modification provision is tempered by § 1322(b)(5), which provides that a Chapter 13 plan must "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."  11 U.S.C. § 1322(b)(5).  Taken together, these two provisions preserve a home lender's contract rights—including any right to collect fees and costs—during the pendency of the bankruptcy case while simultaneously permitting the debtor to cure prepetition arrearages under the plan.  Some

---

[7] Any creditor whose claim is secured by collateral, the value of which exceeds the amount of the claim (i.e. an oversecured creditor) is entitled to collect reasonable fees and interest provided for under the loan documents to the extent that creditor is oversecured.  11 U.S.C. § 506(b).  This provision of the Bankruptcy Code applies to all oversecured creditors and not just to creditors with claims secured by the debtor's principal residence; though, the latter enjoy special protection in Chapter 13 cases pursuant to § 1322(b)(2).

courts have also determined that § 1322(b)(2) has the effect of incorporating a home lender's contract rights into a Chapter 13 plan and that charging and collecting fees without court approval violates Bankruptcy Rule 2016 and the confirmation order. *See, e.g.*, *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 643, 657-61 (Bankr. S.D. Tex. 2007).

### 2. Procedural Requirements for Seeking Fees and Expenses from the Estate: Bankruptcy Rule 2016

A creditor seeking to be reimbursed out of the estate for attorneys' fees and costs must file an application that conforms with the requirements of Bankruptcy Rule 2016. Bankruptcy Rule 2016 provides, *inter alia*, that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." The requirements of Bankruptcy Rule 2016 "shall apply to an application for compensation for services rendered by an attorney or an accountant even though the application is filed by a *creditor* or other entity." Fed. R. Bankr. P. 2016(a) (emphasis added).

In *Johnson v. Georgia Highway Express, Inc.*, the Fifth Circuit provided factors for bankruptcy courts to weigh in assessing the reasonableness of fees, including: (1) time and labor devoted to the matter; (2) the novelty and difficulty of the questions as well as skill required to perform the legal service properly; (3) whether the fee is fixed or contingent; (4) the amount involved; (5) the results obtained; and (6) other awards in similar cases. 488 F.2d 714, 717-19 (5th Cir. 1974). In applying these factors, bankruptcy courts must follow a three-step process: (1) determine the nature and extent of the services supplied by the attorney with reference to the time and labor records submitted; (2) ascertain the value of the services; and (3) briefly explain the

15

findings and reasons upon which the award is based. *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1299-1300 (5th Cir. 1977). An application properly filed pursuant to Bankruptcy Rule 2016 provides the Court with the information necessary to review fees being sought pursuant to *Johnson* and *In re First Colonial*.

Wells Fargo argues that Bankruptcy Rule 2016 does not apply to secured creditors seeking to be reimbursed for fees and costs out of the estate. However, because Wells Fargo, ASC, and Countrywide properly filed 2016 applications in the respective debtors' bankruptcy cases, there is no controversy for this Court to resolve and this issue need not be addressed.

## C.   Application of the Law to the Cases at Bar

The home lenders—or their assignees—in the four above-referenced cases seek to be reimbursed out of the respective debtors' bankruptcy estates for the fees they paid or promised to pay Barrett Daffin in connection with Barrett Daffin's services in preparing and filing proofs of claim and fee applications in the above-referenced debtors' cases.[8]

---

[8] Section 203.552 of the HUD regulations governs fees and charges after endorsement. This section contains a list of customary fees and charges that a mortgagee may collect from a mortgagor after insurance endorsement, which include the following:

(9) Attorney's and trustee's fees and expenses actually incurred (including the cost of appraisals pursuant to § 203.368(e) and cost of advertising pursuant to § 203.368(h)) when a case has been referred for foreclosure in accordance with the provisions of this part after a firm decision to foreclose if foreclosure is not completed because of a reinstatement of the account. (No attorney's fee may be charged for the services of the mortgagee's or servicer's staff attorney or for the services of a collection attorney other than the attorney handling the foreclosure.)

. . . .

(12) Such other reasonable and customary charges as may be authorized by the Secretary. (This shall not include:
(i) Charges for servicing activities of the mortgagee or servicer;
(ii) Fees charged by independent tax servicer organizations which contract to furnish data and information necessary for the payment of property taxes,
(iii) Satisfaction, termination, or reconveyance fees when a mortgage is paid in full (other than as provided in paragraph (a)(11) of this section), or
(iv) The fee for recordation of a satisfaction of the mortgage in states where recordation is the responsibility of the mortgagee.)
(13) Where permitted by the security instrument, attorney's fees and expenses actually incurred in the

16

### 1.    Common Objections in the Four Cases

The debtors in the Rangel case, the Meza case, and the Vazquez case object to the home lenders' fee applications on the grounds that the filing of a proof of claim is "a ministerial act for which no attorneys' fees should be charged against a debtor." Additionally, the Debtors in all four of the above-referenced cases raise the following objections: (a) the home lenders have failed to fully comply with Bankruptcy Rule 2016; and (b) the fees that the home lenders paid or promised to pay Barrett Daffin are unreasonable compensation for the services provided. The Court will address each argument in turn.

### a.    The filing of a proof of claim is not merely a "ministerial act."

In support of their contention that attorneys' fees should not be awarded for the filing of a proof of claim, Rangel, Meza, and the Vazquezes cite *In re Allen*, 215 B.R. 503 (Bankr. N.D. Tex. 1997); *In re Madison*, 337 B.R. 99 (Bankr. N.D. Miss. 2006); *In re Staggie*, 255 B.R. 48 (Bankr. D. Idaho 2000); and *In re Banks*, 31 B.R. 173 (Bankr. N.D. Ala. 1982). Those cases essentially reason that preparing and filing a proof of claim is a ministerial act, which does not require any special legal training and therefore does not constitute the practice of law. This Court declined to address the

---

> defense of any suit or legal proceeding wherein the mortgagee shall be made a party thereto by reason of the mortgage; (No attorney's fee may be charged for the services of the mortgagee's or servicer's staff attorney.)
>
> 24 C.F.R. § 203.552 (2005).
>
> The fees incurred by the mortgagees, or their assignees, in these Chapter 13 cases do not fall under any of the categories of fees and charges authorized by the HUD regulations. First, the home lenders in these cases are not seeking to be reimbursed for fees incurred with respect to foreclosure proceedings such that subsection 9 is inapplicable. Second, there is nothing in the record establishing that the fees sought in the above-referenced Chapter 13 cases have been authorized by the Secretary of Housing and Urban Development so as to be collectable pursuant to subsection 12. Third, pursuant to subsection 13, mortgagees are permitted to collect attorneys' fees "incurred in the defense of any suit or legal proceeding wherein the mortgagee shall be made a party thereto by reason of the mortgage" only where "permitted by the security instrument." As set forth below, only in the Meza case do the loan documents permit ASC to collect the fees incurred by Barrett Daffin. The security instruments—i.e. the deeds of trust—in the Rangel case, the Gilbreath case, and the Velazquez case do not permit the home lenders in those cases to recover Barrett Daffin's fees.

issue in *In re Hight*, but noted the split of authority on the issue, as aptly described by Bankruptcy Judge Letitia Clark (now Judge Letitia Paul). *In re Hight*, 393 B.R. 484, 500 n.17 (Bankr. S.D. Tex. 2008) (citing *In re Moye*, 385 B.R. 885, 891 (Bankr. S.D. Tex. 2008)). Essentially, the courts allowing attorneys' fees associated with filing a proof of claim reason that preparing a proof of claim requires an examination of relevant law, while other courts have determined that the filing of a proof of claim is a ministerial act for which attorney services are not necessary. *See id.*

In this Court's view, the filing of a proof of claim is not a mere ministerial act. Indeed, this Court has repeatedly cautioned attorneys practicing before it of the serious and far-reaching implications of failing to file a proof of claim correctly. In *In re Gilbreath*, this Court explained that a creditor's failure to comply with Bankruptcy Rule 3001 and the instructions on the official proof of claim form deprives the claim of prima facie validity. *In re Gilbreath*, 395 B.R. 356, 361-65 (Bankr. S.D. Tex. 2008). In that case, this Court also described the nuanced burden-shifting that occurs during the claim objection process and how that framework may affect a creditor's ability to freely amend its proof of claim. *Id.* at 365-66. This Court has also recognized that statements made in a proof of claim are made under penalty of perjury. *In re Hence*, No. 06-32451-H4-13, 2007 WL 4333834, at *5 (Bankr. S.D. Tex. Dec. 5, 2007). Indeed, the Supreme Court has recognized that the decision to file a proof of claim subjects a creditor to the jurisdiction of the bankruptcy court. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 (1989). Given the breadth of case law and far-reaching legal implications inherent in the filing of proofs of claim, this Court agrees with Judge Paul that paying an attorney "for preparation of the proof of claim and the additional services rendered is reasonable." *In re Moye*, 385 B.R. at 892.

**b.**     **The home lenders, or their assignees, have substantially complied with Bankruptcy Rule 2016.**

In each case, the debtor alleges that the home lender failed to comply with Bankruptcy Rule 2016. Countrywide, ASC, and Wells Fargo have filed fee applications in each debtor's Chapter 13 case pursuant to Bankruptcy Rule 2016. [Findings of Fact No. A5, B7, C6, and D7.] In accordance with the requirements of Bankruptcy Rule 2016, these applications contain detailed statements of the services rendered, time expended, and the expenses incurred by Barrett Daffin in preparing and filing proofs of claim and fee applications on behalf of Countrywide, ASC, and Wells Fargo in the four above-referenced cases. *Id.* The applications also set forth that these respective creditors have retained Barrett Daffin on a fixed fee basis and discloses the amount charged in each case for claim services and for preparing and filing a fee application that conforms with Bankruptcy Rule 2016. *Id.* The applications explain that each of these creditors have either paid or promised to pay Barrett Daffin for its services in connection with the four above-referenced cases. *Id.* Therefore, the home lenders, or their assignees, have complied with Bankruptcy Rule 2016. Additionally, even if the services of an attorney are not required in order to file a proof of claim, fees and costs may still be compensable so long as the loan documents authorize their collection. *See* 11 U.S.C. § 1322(b)(2) (providing that a home lender's contract rights may not be modified in Chapter 13).

**c.**     **Barrett Daffin's fixed fee is reasonable compensation for the services rendered.**

With respect to the Rangel and Velazquez cases, Countrywide has agreed to pay Barrett Daffin a fixed fee of $200.00 for the following "Claim Services":

> Set-up case to permit efficient handling, provide for entry of information necessary to prepare proof of claim in accordance with client referral; review petition for relief; prepare and file notice of appearance; search for prior bankruptcy filings by this

debtor to determine application of Section 362(h); review bankruptcy schedules and statement of financial affairs; prepare and file a proof of claim on clients behalf; review debtor's plan regarding treatment for Applicant's interests in connection with recommendation whether to object to plan if necessary; supervise case through the time of confirmation.

[Case No. 07-37452, Docket No. 45; Case No. 08-33200, Docket No. 55.] Countrywide also agreed to pay Barrett Daffin a fixed fee of $150.00 to "[p]repare and prosecute [the] fee application." *Id.*

With respect to the Meza and Gilbreath cases, ASC and Wells Fargo, respectively, have agreed to pay Barrett Daffin a fixed fee of $250.00 for the following "Claim Services":

Case set-up and review of petition, schedules, and statement of financial affairs; search for prior bankruptcy filings by this debtor; preparation and filing of a Notice of Appearance; preparation and filing of the Proof of Claim; review of the plan with regard to treatment of the Applicant's interest; and supervision of the case through confirmation.

[Case No. 07-38242, Docket No. 45; Case No. 08-32404, Docket No. 143.] ASC and Wells Fargo also agreed to pay Barrett Daffin a fixed fee of $150.00 for "[p]reparation and prosecution of [the] Rule 2016 Fee Application." *Id.*

Barrett Daffin has also provided detailed descriptions of the services provided in each debtor's Chapter 13 case and the hours expended on each particular task. Additionally, the firm has disclosed the names of the attorneys and various other personnel who worked on the above-referenced debtors' cases, the time each expended, and the hourly rate that these professionals actually charge.

Based on this information, this Court finds that $200.00—in the Rangel and Velazquez cases—and $250.00—in the Meza and Gilbreath cases—are reasonable fees for the services provided by Barrett Daffin with respect to prosecuting and preserving their clients' claims in those cases. Additionally, this Court finds $150.00 to be a reasonable fee for Barrett Daffin's services

rendered in preparing and filing an application pursuant to Bankruptcy Rule 2016. Because this Court has concluded that Barrett Daffin's fees were reasonable in each of the four above-referenced cases, it must now proceed to determine whether the home lenders, or their assignees, are permitted to recover these fees from the respective debtors' Chapter 13 estates.

### 2.    The Rangel Case

Because Countrywide's claim is secured by Rangel's principal residence, Countrywide has the right to collect fees and costs provided for under its loan documents. Rangel has objected to Countrywide's fee application on the following grounds:[9] (a) Countrywide may not collect fees pursuant to the note because the note is not in evidence; and (b) the deed of trust does not provide a basis for the fees requested. The Court will address each argument in turn.

#### a.    Countrywide may not recover attorneys' fees under the note.

This Court agrees that Countrywide may not collect fees pursuant to the terms of its note with Rangel. Countrywide did not attach the note to its proof of claim in the Rangel case and did not offer the note at the February 26 hearing. [Finding of Fact No. A3.] Thus, the note is not in evidence and, because Countrywide may only recover fees and costs that are provided for in its loan documents, the deed of trust is all that remains for Countrywide to establish that it is entitled to reimbursement for the amounts paid or promised to Barrett Daffin in connection with the Rangel case.

#### b.    The deed of trust does not authorize Countrywide to recover attorneys' fees incurred for claim services or preparation of its fee application.

In order to test the merit of Rangel's argument that the deed of trust does not provide a basis

---

[9] Rangel, as well as the other three Chapter 13 debtors, also objected to Countrywide's fee application on the grounds discussed *supra* Part III.C.1.

21

for Countrywide to recover attorneys' fees, this Court must examine the language of the deed of trust. Rangel first asserts that, pursuant to the deed of trust, Countrywide is only allowed to recover attorneys' fees after reinstatement of the note and in connection with foreclosure proceedings. Rangel presumably refers to the section of the deed of trust entitled "Reinstatement," which provides that:

> Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring the Borrower's account current including, to the extent they are obligations of the Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.

This provision allows Countrywide to recover attorneys' fees expended on foreclosure proceedings if Rangel exercises her right to reinstate the note in the event that it is accelerated. While this Court agrees that such a provision would not authorize Countrywide to recover attorneys' fees in connection with its attempt to pursue a claim in Rangel's Chapter 13 case, Rangel's argument ignores other provisions of the deed of trust that authorize Countrywide to recover attorneys' fees.

The provision of the deed of trust entitled "Charges to Borrower and Protection of Lender's Rights in the Property" comes closest to authorizing Countrywide to recover attorneys' fees expended on Barrett Daffin's services in the Rangel case. The relevant portion of that provision sets forth the following: "If . . . there is a legal proceeding that may significantly affect Lender's rights in the property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items

mentioned in paragraph 2" and be reimbursed by Rangel for such costs.  Based on this language, Countrywide may charge Rangel for amounts expended to protect the value of and its rights in the collateral if, and only if, "there is a legal proceeding that may significantly affect Lender's rights in the property." The question therefore is twofold: First, is Rangel's Chapter 13 case a proceeding that could significantly affect Countrywide's security interest in Rangel's homestead? And second, are the acts of filing a proof of claim and a fee application necessary to protect the value of, or Countrywide's rights in, Rangel's homestead?  If either question is answered in the negative, Countrywide is not entitled to be reimbursed for Barrett Daffin's fees in the Rangel case pursuant to the deed of trust.

Rangel's Chapter 13 case is not a proceeding that might substantially affect Countrywide's security interest in Rangel's homestead.  As discussed above, § 1322(b)(2) expressly preserves a home lender's rights (for example, lien-stripping is impermissible).  Although a Chapter 13 debtor may propose to pay arrearages existing on the petition date over a longer period than that contemplated in the loan documents, a Chapter 13 plan may not affect a home lender's security interest in a debtor's homestead.[10]  If, for example, Rangel had brought an action threatening the validity of Countrywide's security interest, Countrywide's efforts to defend itself in such a proceeding would trigger Countrywide's right to be reimbursed.  However, such a proceeding has not been initiated in the Rangel case.  It is also noteworthy that the deed of trust contemplates "a proceeding *in* bankruptcy," (emphasis added), rather than "a bankruptcy proceeding."  While a

---

[10] Pursuant to 11 U.S.C. § 1322(b)(5), a debtor who proposes to cure prepetition arrearages through the plan is obligated to provide for "the maintenance of payments while the case is pending, in addition to making plan payments sufficient to cure the prepetition delinquency."  Thus, even after a debtor files a Chapter 13 petition, he or she must continue to make payments to the home lender—through the Chapter 13 trustee—as they come due while simultaneously making payments to cure prepetition arrearages under the plan.  A Chapter 13 plan may not strip or otherwise affect a home lender's lien because § 1322(b)(5) only concerns arrearages.

proceeding that could potentially affect Countrywide's security interest can certainly arise *in a* Chapter 13 case (for example, Rangel's filing of a suit challenging the validity of Countrywide's lien), the mere filing of a Chapter 13 case, by itself, cannot. Indeed, Rangel's case underscores this point. After filing her Chapter 13 petition, she obtained confirmation of a plan which preserved Countrywide's rights under the note and deed of trust. Thus, Rangel's filing of her Chapter 13 petition did not initiate a proceeding that might substantially affect Countrywide's security interest in her homestead. This conclusion precludes Countrywide from recovering Barrett Daffin's fees pursuant to the deed of trust.

Even if this Court is incorrect in its conclusion that Rangel's Chapter 13 case is not a proceeding that might significantly affect Countrywide's security interest, the second precondition to recovery under the deed of trust—i.e. that Countrywide incur fees necessary to protect the value of, or Countrywide's rights in, Rangel's homestead—has also not occurred. Barrett Daffin's filing of a proof of claim in Rangel's Chapter 13 case could only possibly affect Countrywide's ability to collect prepetition arrearages. *See, e.g., In re Hill*, No. 04-92013-RFN-13, 2006 WL 3337516, at *2 (Bankr. N.D. Tex. Nov. 15, 2006) ("[P]ursuant to section 1322(b)(2) of the Bankruptcy Code, the debtors are not authorized to modify the terms of their mortgage, except for placing pre-petition arrearages in their Chapter 13 plan."). Filing a proof of claim does nothing to protect the value of Rangel's homestead or Countrywide's rights in the homestead. Indeed, § 1322(b)(2) precludes Rangel from modifying the loan documents. Additionally, the $150.00 that Countrywide was charged for Barrett Daffin's preparation and filing of its fee application was also not incurred to protect the value of, or Countrywide's rights in, Rangel's homestead. Rather, those fees were incurred in order to allow Countrywide to recover the costs of filing of the proof of claim and the

24

fee application in the Rangel case. The Court's conclusion might be different if the deed of trust allowed Countrywide to recover fees and costs for protecting its rights under the *note* because the filing of a proof of claim preserves Countrywide's ability to collect arrearages. However, the Court must give effect to the language of the deed of trust as written and must presume that Countrywide's choice of language therein with respect to recoverable fees is purposeful and deliberate.[11] *See, e.g., In re Sanchez*, 137 B.R. 214, 217 (Bankr. E.D. Tex. 1992) (noting that "the failure of a mortgagee to include . . . terms in any contract between the parties is indicative of a lack of intent to include" such terms (citing *Landmark Fin. Servs. v. Hall*, 918 F.2d 1150, 1155-56 (4th Cir. 1990)). For these reasons, Countrywide is not entitled to reimbursement for Barrett Daffin's fees under the deed of trust.

### 3.     The Meza Case

Because ASC's claim is secured solely by Meza's principal residence, ASC is entitled to seek reimbursement for the amount it expended on Barrett Daffin's attorneys' fees if its loan documents so provide. *See supra* Part III.B.1. ASC's loan documents consist of a note and deed of trust executed by Meza. The Court must therefore review the note and deed of trust to determine whether

---

[11] The deed of trust also provides that "any amounts *disbursed*" by Countrywide to protect the value of its collateral or its rights in the collateral will be added to Rangel's secured debt. However, Countrywide has not introduced any evidence that such funds have actually been disbursed to Barrett Daffin. Countrywide's fee application merely alleges that "[t]he foregoing fee for Claim Services . . . has been invoiced and paid in full, or [Countrywide] has promised to pay the fee to [Barrett Daffin] and the same is a non-contingent obligation." Countrywide also concedes in its fee application that "[t]he fee for prosecution of the Fee Application has not been paid; however, [Countrywide] has agreed or promised to pay this fee and it is a non-contingent obligation." Therefore, even if this Court is incorrect in its interpretation of the deed of trust in all other respects, Countrywide would still not be entitled to recover amounts promised, but not actually "disbursed," to Barrett Daffin.

It is unclear whether any amounts have been actually disbursed to Barrett Daffin in connection with its services in the Rangel case. However, because this Court has already concluded that Countrywide's fee application should be denied on other grounds, it need not address the technical issue of whether funds have, in fact, been disbursed to Barrett Daffin.

those documents, when read together,[12] authorize ASC to recover the amount it paid or promised to pay Barrett Daffin for claim services and for preparing and filing ASC's fee application in the Meza case.

ASC's note authorizes ACS to be reimbursed by Meza for costs of enforcing the note after ASC exercises its right to accelerate the debt in the event of Meza's default. Specifically, the note provides as follows:

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
>
> . . . .
>
> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Thus, ASC is entitled to recover Barrett Daffin's attorneys fees if (a) ASC exercised its right to accelerate the note, and (b) the services provided by Barrett Daffin constitute costs of enforcing the note not prohibited by applicable law. The Court finds that both conditions are satisfied.

At the February 26 hearing on ASC's fee application, ASC introduced into evidence, without

---

[12] "It is well-established in Texas law that separate instruments executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together." *Cadle Co. v. Butler*, 951 S.W.2d 901, 908-09 (Tex. App.—Corpus Christi 1997, no pet.) (citing *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981); *Miles v. Martin*, 321 S.W.2d 62, 65 (Tex. 1959); *Veal v. Thomason*, 159 S.W.2d 472, 475 (Tex. 1942); *Braniff Inv. Co. v. Robertson*, 81 S.W.2d 45, 50 (Tex. 1935)). In the four above-referenced cases, "[t]he Note and Deed of Trust must be construed together because they were signed by the same parties on the same day, identify the same subject matter, each document references the other, and the deed of trust is identified as the security for the note." *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 868 (Tex. App.—Dallas 2005, no pet.); *see also, e.g., Vista Dev. Joint Venture II v. Pac. Mut. Life Ins. Co.*, 822 S.W.2d 305, 307 (Tex. App.—Houston [1st Dist.] 1992, writ denied) ("When a note and deed of trust are executed contemporaneously for the same purpose in the course of a transaction, they are to be considered as though they are in fact a single instrument."); *Chapa v. Herbster*, 653 S.W.2d 594, 600 (Tex. App.—Tyler 1983, no writ) ("The note and deed of trust on . . . property should be construed together and effectively regarded as one instrument.").

objection, the notice of acceleration sent by ASC to Meza on November 8, 2007. This document clearly notified Meza that U.S. Bank National Association (the lender for whom ASC acts as servicer) had elected to accelerate the debt. Thus, the Court finds that ASC elected to accelerate Meza's debt in accordance with the note and that this precondition to fee recovery has been satisfied.

Additionally, the claim services provided by Barrett Daffin in connection with the Meza case are costs of enforcing the note. Although § 1322(b)(2) prevents Meza from modifying ASC's rights under the note and deed of trust, Meza's initiation of her Chapter 13 case posed a possible threat to ASC's ability to collect arrearages. Even though Meza remains obligated to make future payments to ASC pursuant to the terms of the note, Barrett Daffin's preparation and filing of a proof of claim on ASC's behalf in the Meza case preserved ASC's ability to collect arrearages though Meza's Chapter 13 plan. Because ASC's right to collect past due payments is a right specifically provided for under the note, Barrett Daffin's claim services in the Meza case was a cost of enforcing the note. Therefore, the note allows ASC to recover the $250.00 that ASC paid or promised to pay Barrett Daffin for its services in preparing and filing a proof of claim on ASC's behalf, and § 1322(b)(2) preserves that right.

All that is left to determine is whether the $150.00 charged by Barrett Daffin to prepare and file ASC's fee application is a cost of enforcing the note. As discussed above, the note entitles ASC to recover the costs of enforcing the note, including reasonable attorneys' fees. Once Meza filed her Chapter 13 petition, any attempt by ASC to recover attorneys' fees from her estate in accordance with the note required ASC to file a fee application pursuant to Bankruptcy Rule 2016. *See supra* Part III.B.2. Because the act of preparing and filing such an application is a necessary prerequisite to actually obtaining fees from Meza's bankruptcy estate, the Court finds that the preparation and

filing of ASC's fee application is also a cost of enforcing the note for which ASC is entitled to recover attorneys' fees. "In the Fifth Circuit, and elsewhere, reasonable compensation for preparation of a fee application is permissible." *In re Office Prods. of Am., Inc.*, 136 B.R. 964, 977 (Bankr. W.D. Tex. 1992); *see also In re Braswell Motor Freight Lines, Inc.*, 630 F.2d 348, 351 (5th Cir. 1980); *Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088, 1093 (5th Cir. 1980).

As in the Rangel case, there is no indication that ASC actually paid Barrett Daffin for its services in the Meza case. ASC's fee application in the Meza case provides that "[t]he foregoing fee for Claim Services . . . has been invoiced and paid in full, or [ASC] has promised to pay the fee to [Barrett Daffin] and the same is a non-contingent obligation." The fee application also provides that "[t]he fee for prosecution of the Fee Application has not been paid; however, [ASC] has agreed or promised to pay this fee and it is a non-contingent obligation." However, unlike Countrywide's deed of trust in the Rangel case, ASC's note does not require that funds actually be disbursed by ASC in order to be recoverable. ASC's note simply provides that once the debt has been accelerated, ASC has the right "to be paid back by [Meza] for all of its costs and expenses in enforcing the note." Based on this language, the Court concludes that ASC is entitled to recover $400.00 from Meza's estate for its obligation to pay Barrett Daffin for its services in the Meza case.

### 4.    The Gilbreath Case

Because Wells Fargo's claim is secured solely by the Gilbreaths' principal residence, it may be entitled to seek reimbursement for the amount it expended on Barrett Daffin's attorneys' fees if the loan documents so provide. *See supra* Part III.B.1.

As discussed above, *supra* note 12, Wells Fargo's note and deed of trust must be read together to determine Wells Fargo's rights under its loan documents with the Gilbreaths. The

Gilbreaths' note contains language nearly identical to the note in the Meza case:

> If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by the regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. . . .
>
> . . . .
>
> If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law.

Thus, as in the Meza case, Wells Fargo is required to exercise its right to accelerate the Gilbreaths' debt before it is entitled to be reimbursed for the costs and expenses of enforcing the note.

However, unlike the lender in the Meza case, Wells Fargo has adduced no evidence to establish that it provided the Gilbreaths with notice of acceleration. Indeed, counsel for Wells Fargo stipulated at the February 26 hearing that the note had *not* been accelerated in the Gilbreath case. Thus, according to the language of the note, Wells Fargo is not entitled to recover the fees it paid or promised to pay to Barrett Daffin for its services in the Gilbreath case under the note. Because Wells Fargo may not recover under the note, this Court must examine the deed of trust to determine whether it contains a provision that authorizes Wells Fargo to recover fees and costs for Barrett Daffin's services in connection with the Gilbreath case.

The deed of trust executed by the Gilbreaths contains the following language with respect to Wells Fargo's right to be repaid for attorneys' fees. The applicable portion of the deed of trust, reprinted in full in Finding of Fact No. C5, provides that "[i]f . . . there is a legal proceeding that may significantly affect [Wells Fargo's] rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then [Wells Fargo] may do and pay whatever is necessary to protect the value of the Property and [Wells Fargo's] rights in the Property." Thus, as

29

in the Rangel case, Wells Fargo may only recover attorneys' fees from the Gilbreaths' bankruptcy estate if (a) the Gilbreaths' Chapter 13 case is a proceeding that may significantly affect Wells Fargo's rights in the collateral, and (b) Barrett Daffin's claim services and filing of a fee application on Wells Fargo's behalf are necessary to protect the value of, and Wells Fargo's rights in, its collateral.

As discussed *supra* Part III.C.1.b, the filing of a Chapter 13 petition, by itself, does not initiate a proceeding that poses a significant threat to Wells Fargo's rights in the collateral. Because Wells Fargo is a home lender, its rights under the loan documents—aside from its right to collect arrearages, *see supra* Part III.B.1—may not be modified by the Gilbreaths in their Chapter 13 plan. Additionally, no proceeding (i.e. no lawsuit challenging Wells Fargo's lien) has been initiated in the Gilbreath case that might affect Wells Fargo's interest in the Gilbreaths' homestead. Thus, the first precondition to Wells Fargo's right to recover attorneys' fees has not occurred.

Further, even if a Chapter 13 case constitutes a proceeding that might significantly affect Wells Fargo's security interest, this Court concludes, as it did in the Rangel case, that Barrett Daffin's preparation and filing of a proof of claim and fee application are not services that are necessary to protect the value of, and Wells Fargo's rights in, its collateral. Filing a proof of claim merely preserves Wells Fargo's right to collect arrearages due under the note and, as discussed above, Wells Fargo may only collect fees pursuant to the note if it first accelerates the debt—which it has not done. [Finding of Fact No. E.] Additionally, unlike the Meza case, Barrett Daffin's filing of a fee application on Wells Fargo's behalf is not an act that is incidental to enforcing Wells Fargo's right to collect attorneys' fees under the note. This is so because Wells Fargo has not accelerated the note in the Gilbreath case—an express condition to recovering any costs of enforcing the note.

In sum, there is no provision of the note or deed of trust that authorizes Wells Fargo to charge the Gilbreaths for the costs of filing a proof of claim or fee application in the Gilbreaths' Chapter 13 case.

### 5.    The Velazquez Case

Because Countrywide's claim is secured by the Velazquezes' principal residence, it may be entitled to seek reimbursement for the amount it expended on Barrett Daffin's attorneys' fees under their loan documents. *See supra* Part III.B.1.  The note executed by the Velazquezes—like the Gilbreaths' note—entitles Countrywide to be reimbursed by the debtor for the costs of enforcing the note only after Countrywide exercises its option to accelerate.   Specifically, the Velazquez note provides as follows:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

As in the Gilbreath case, Barrett Daffin failed to adduce any evidence that Countrywide took steps to accelerate the note and, in fact, conceded as much at the February 26 hearing.  [Finding of Fact No. E.] Therefore, Countrywide is not entitled to recover the amount it expended on Barrett Daffin's services  under the note.

Additionally, the deed of trust does not entitle Countrywide to be reimbursed for attorneys' fees expended on filing its proof of claim and fee application in the Velazquez case.  The applicable provision of the deed of trust contains a farrago of conjunctive and disjunctive language.  The deed of trust provides that

> [i]f . . . there is a legal proceeding that might significantly affect [Countrywide's] interest in the Property ***and/or*** rights under this Security Instrument (such as a

proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations) . . . then Lender may do and pay whatever is reasonable or appropriate to protect Lender's interest in the Property **_and_** rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.

(emphasis added). The deed of trust also provides a list of actions for which Countrywide may be entitled to recover its costs of protecting its interest in the collateral and rights under the deed of trust, which includes "paying reasonable attorneys' fees to protect its interest in the Property **_and/or_** rights under this Security Instrument, including its secured position in a bankruptcy proceeding."

This provision of the deed of trust contains a triggering clause that, if satisfied, permits Countrywide to recover certain costs from the Velazquezes and an enabling clause that describes Countrywide's rights once the triggering conditions occur—i.e. the sort of expenditures for which Countrywide may recover.

Countrywide's right to recover costs is triggered if "there is a legal proceeding that might significantly affect [Countrywide's] interest in the Property **_and/or_** rights under this Security Instrument." Countrywide's "interest in the Property"—i.e. the Velazquezes' homestead—cannot be affected by the Velazquezes' Chapter 13 proceedings because, as discussed above, § 1322(b)(2) expressly provides that a Chapter 13 plan may not modify a home lender's contract rights.[13] Additionally, there are no competing liens on the Velazquezes' homestead such that Countrywide's

---

[13] The deed of trust itself provides a nonexclusive list of the sort of actions that could be taken to protect Countrywide's interest in its collateral "and/or" rights under the deed of trust, such as "(a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding." The only sort of proceeding that this Court can envision which might significantly affect Countrywide's security interest in the Velazquezes' homestead is a proceeding that challenges the validity of Countrywide's lien or its place on the priority hierarchy. No proceedings of that nature have been brought in the Velazquez case.

lien might be threatened.   However, Countrywide's use of interchangeable conjunctive and disjunctive language also triggers Countrywide's right to recover costs if there is a legal proceeding that might significantly affect Countrywide's "rights under [the] Security Instrument" (i.e. the deed of trust).  The question is therefore whether the Velazquezes' Chapter 13 case is a legal proceeding that might significantly affect Countrywide's rights under the deed of trust.  If the answer is in the affirmative, then Countrywide's right to recover certain costs has been triggered.

A close reading of the deed of trust reveals that the Velazquezes' obligations under the note are incorporated by reference.  The subsection of the deed of trust entitled "Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges" contains the following language: "Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note."  The Court finds this language to be sufficient to incorporate Countrywide's right to enforce the note into the deed of trust. Countrywide's rights under the deed of trust necessarily include the right to enforce the note secured by the deed of trust.[14]  The Fifth Circuit held as much in *Campbell v. Countrywide Home Loans, Inc.*, where it construed the exact same language in another Chapter 13 debtor's deed of trust as giving Countrywide the right to proceed against the debtor for unpaid monthly payments.  545 F.3d 348, 352 (5th Cir. 2008).   Thus, the Velazquezes' filing of their Chapter 13 case set in motion a proceeding that could significantly affect Countrywide's rights under the note, and therefore the deed

---

[14] The Court notes that construing the deed of trust in this manner creates a contradiction in terms. If the deed of trust incorporates the terms of the note by reference, then the provision of the note requiring that the debt be accelerated before Countrywide may recover fees and costs is also subsumed within the deed of trust.  Thus, whether the note and deed of trust are read together or separately—as discussed *supra* note 12—is largely irrelevant because the deed of trust expressly incorporates the terms of the note. This is precisely why the note and deed of trust should be construed as a single, inextricable document.  The deed of trust is technically not enforceable without the note, as the note furnishes consideration for the deed of trust and vice versa.

33

of trust securing the note. The triggering event has occurred.

Because the Velazquez case is a legal proceeding that could affect Countrywide's rights under the deed of trust, Countrywide is entitled to "do and pay whatever is reasonable or appropriate to protect Lender's interest in the Property ***and*** rights under this Security Instrument" and be reimbursed by the Velazquezes for the costs of doing so. However, just as Countrywide's use of disjunctive language in the triggering clause expanded the conditions that would set off Countrywide's rights, its use of conjunctive language in the enabling clause limits the expenses for which Countrywide may recover.[15] According to the enabling clause, Countrywide has the right to be reimbursed for reasonable sums it has paid to protect Countrywide's (a) interest in the property ***and*** (b) its rights under the deed of trust. Thus, pursuant to the language of the deed of trust which Countrywide itself drafted, Countrywide may only be reimbursed for expenses that protect both its interest in the Velazquezes' homestead ***and*** its rights under the deed of trust. While Barrett Daffin's filing of a proof of claim on Countrywide's behalf may be an act to preserve Countrywide's rights under the deed of trust (i.e. the right to enforce the note which the deed of trust secures), it is certainly not an act to preserve Countrywide's interest in the Velazquezes' homestead, which, as discussed above, could not be affected by a Chapter 13 proceeding. Because the amount Countrywide expended on Barrett Daffin's claim services are not recoverable, neither are the costs

---

[15] The Fifth Circuit has made clear that the word 'and' is to be accepted for its conjunctive connotation rather than as a word interchangeable with 'or' except where strict grammatical construction will frustrate the drafter's clear intent. *Bruce v. First Fed. Sav. & Loan Ass'n of Conroe Inc.*, 837 F.2d 712, 715 (5th Cir. 1988). The use of conjunctive language between conditions in a series connotes the drafter's intention that all the conditions must be met. *See, e.g., Miss. Coast Marine, Inc. v. Bosarge*, 637 F.2d 994, 998 (5th Cir. 1981) (determining that because the exemption criteria in a statute contained conjunctive language, both of the conditions had to be met in order to qualify for the exemption); *Ranger, Inc. v. Equitable Life Assurance Soc'y of the U.S.*, 196 F.2d 968, 972 (6th Cir. 1952) (determining that where a statute uses conjunctive rather than disjunctive language, the decision to employ such language "clearly implies that both conditions must exist").

of filing the fee application. The $150.00 that Countrywide expended to have Barrett Daffin's fees paid out of the estate, rather than Countrywide's own pockets, does not qualify as cost of protecting Countrywide's interest in its collateral or rights under the deed of trust.

For the reasons stated above, Countrywide's loan documents do not permit Countrywide to recover Barrett Daffin's fees from of the Velazquezes' bankruptcy estate. Countrywide has not accelerated the note and its decision not to do so precludes Countrywide from seeking reimbursement for amounts expended to enforce the note. Additionally, even if the deed of trust provides a separate and distinct avenue by which Countrywide could seek reimbursement for the amounts paid to Barrett Daffin, the deed of trust only allows Countrywide to be reimbursed for expenses aimed at protecting its interest in its collateral *and* its rights under the deed of trust.

### IV. CONCLUSION

This Court will not give the home lenders in the above-referenced cases the benefit of the doubt when it comes to interpreting the loan documents that they themselves drafted. As stated above, this Court must presume that the language these lenders employed in their loan documents was placed there deliberately. The Court has scrutinized these documents in painstaking detail because these lenders are seeking to be paid out of the estates of four debtors in bankruptcy; every penny they collect necessarily diminishes the amount available to pay unsecured creditors and reduces the odds that these debtors will be able to propose and maintain payments on a feasible plan of reorganization. This Court, in its role as gatekeeper, must assure that only those creditors who can show they are affirmatively entitled to recover fees from the debtor's bankruptcy estate be permitted to do so. *See Foreclosure Cases*, 2007 WL 3232430, at *3 n.3 (N.D. Ohio 2007) ("Unlike the focus of financial institutions, the federal courts must act as gatekeepers, assuring that only those

who meet [certain requirements] are allowed to pass through."). This Court is not averse to home lenders recovering their fees and costs from a Chapter 13 debtor's estate so long as they do so in compliance with their loan documents and the Bankruptcy Code.

For the reasons stated above, Countrywide's fee application in the Rangel case should be denied, ASC's fee application in the Meza case should be granted, Wells Fargo's fee application in the Gilbreath case should be denied, and Countrywide's fee application in the Velazquez case should be denied. Orders consistent with this Opinion will be entered on the docket simultaneously with the entry of this Opinion.

Signed on this 29th day of May, 2009

Jeff Bohm
United States Bankruptcy Judge